UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

NORMAN PAUL ADAMS, JR.,           )
                                  )
    *Plaintiff*,                 )
                                  )
v.                                )           No. 4:13-cv-22-HSM-SKL
                                  )
COMMISSIONER OF SOCIAL SECURITY,  )
                                  )
    *Defendant*.                 )

## REPORT AND RECOMMENDATION

Plaintiff Norman Paul Adams, Jr. brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his disability insurance benefits ("DIB"). Plaintiff has moved for judgment on the pleadings [Doc. 14] and has filed a memorandum in support [Doc. 16]. Defendant has moved for summary judgment [Doc. 18] and has filed a memorandum in support [Doc. 19]. Plaintiff alleges that the administrative law judge ("ALJ") erred by: (1) having a different ALJ sign the decision than the ALJ who presided over the hearing; (2) failing to properly consider Plaintiff's impairments; (3) failing to include a function-by-function assessment; (4) not giving proper weight to the opinion of the treating physician; (5) failing to include any mental limitations in the RFC determination despite the ALJ's finding that Plaintiff's anxiety was a severe impairment; (6) improperly evaluating Plaintiff's credibility; and (7) concluding that Plaintiff had no severe mental limitations based solely on his Global Assessment of Functioning ("GAF") scores. For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for judgment on the pleadings [Doc. 14] be **DENIED**; (2) the Commissioner's

motion for summary judgment [Doc. 18] be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

## I.      ADMINISTRATIVE PROCEEDINGS

Plaintiff initially filed his application for DIB on August 12, 2010, alleging disability as of January 1, 2007 (Transcript [Doc. 10] ("Tr.") 15).  Plaintiff later amended his alleged onset date to September 29, 2008 (Tr. 15).  Plaintiff's claim was denied initially and upon reconsideration, and he requested a hearing before the ALJ (Tr. 15).  The ALJ held a hearing on September 23, 2011, during which Plaintiff was represented by a non-attorney representative (Tr. 15, 30).  The ALJ issued a decision on October 13, 2011 and determined Plaintiff was not disabled because the ALJ found Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy (Tr. 15-25).  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, appealable decision of the Commissioner (Tr. 1-3).   Plaintiff filed the instant action on March 15, 2013 [Doc. 1].

## II.     FACTUAL BACKGROUND

### A.      Education and Employment Background

Plaintiff was 49 years old at the date last insured (Tr. 36).  Plaintiff has a sixth grade education, although some of his records show he completed the tenth grade because he "told a story" to have a better chance while looking for a job (Tr. 36).  Plaintiff has past relevant work as a laborer, specifically a welder, construction worker, and factory worker (Tr. 36-37).  Plaintiff has not worked since his alleged onset date of September 29, 2008 (Tr. 35).  Plaintiff stated that he last worked in 2005 (Tr. 35) and that he stopped working because his work "was too physical for [him]" (Tr. 38).

## B.     Medical Records

Only the portion of Plaintiff's medical records relevant to the parties' arguments will be addressed herein, but all relevant medical records have been reviewed by the Court.   As Plaintiff's arguments principally involve the opinions of Maria Delores Jumao-as Salibay, M.D. ("Dr. Salibay") and Brian D. Haworth, Psy.D., H.S.P. ("Dr. Haworth"), the portions of the record involving Dr. Salibay and Dr. Haworth are briefly summarized below.

### 1.     Dr. Salibay

At Plaintiff's first appointment with Dr. Salibay on September 17, 2004, Plaintiff reported headaches with a severity scale of five out of 10 and low back pain, especially when lifting (Tr. 264).   Dr. Salibay ordered an MRI, X-ray, CT scan, NCS/EMG, and blood work. Plaintiff's cervical spine MRI, brain MRI, X-rays of the hips, CT scan, NCS/EMG and blood work were all normal, while his lumbar spine MRI and X-ray showed mild degenerative disc disease with very minimal posterior disc bulge at L3-4, moderate degenerative disc disease with a mild broad based posterior disc bulge, and mild central disc bulge at L5-S1, which minimally compressed the thecal sac (Tr. 264).   Dr. Salibay prescribed medications to Plaintiff for his symptoms, and noted that Plaintiff was not working (Tr. 264-65).   Plaintiff saw Dr. Salibay for many more appointments in 2004, during which Plaintiff complained of headaches and lower back pain, and Dr. Salibay adjusted Plaintiff's medications (Tr. 266-67).   In late 2004, Plaintiff informed Dr. Salibay that his headaches and neck pains were better but his lower back pain persisted (Tr. 268).

In January and February of 2005, Plaintiff reported to Dr. Salibay that his headaches and shoulder pain had improved, that his strength was good and his lifting was okay (Tr. 269). Plaintiff reported that his daily headache is "not serious, rated 4/10" (Tr. 269).   Dr. Salibay

recommended that Plaintiff consult with an orthopedic surgeon and referred Plaintiff to Dr. Ramprasad, but Plaintiff did not show up for two appointments with Dr. Ramprasad and later told Dr. Salibay that he did not want surgery (Tr. 269-70). In March 2005, Plaintiff reported that his headaches had improved but his back and shoulder pain continued, and he refused injection treatments (Tr. 270). In May 2005, Plaintiff reported that his headaches were better, but his low back pain increased if he did too much, and Plaintiff stated that he wanted to go back to work (Tr. 270). In June 2005, Plaintiff reported his back and shoulder pains were still bothering him, but his headaches were better due to the medication (Tr. 271). For the rest of 2005, Plaintiff reported no change in his symptoms, although he did lose his insurance (Tr. 271-72).

In February 2006, Plaintiff sought medication refills and reported that he was going to Texas for work (Tr. 272). In August 2006, Plaintiff reported that he had been off all his medications except Xanax since February 2006 and that he had been working for a boat company in Texas (Tr. 272). Plaintiff also reported that he would be going to New Orleans to work tearing down houses (Tr. 272). In November 2006, Plaintiff sought medication refills and reported that he had a little headache, but it did not bother him (Tr. 273).

In March 2007, Plaintiff sought medication refills and reported continued low back pain (Tr. 273). In June 2007, Plaintiff sought refills and reported neck pain (Tr. 273). In July 2007, Plaintiff informed Dr. Salibay that his lower back "hurts bad" because he had been moving boxes (Tr. 274). Plaintiff had improved by his next appointment, informing Dr. Salibay that he was doing "fair" on November 5, 2007, when he came in for medication refills, and he reported he was returning to Texas for work (Tr. 274).

At Plaintiff's next appointment on March 17, 2008, Plaintiff informed Dr. Salibay that he was wearing ear plugs while at the shooting range, and he complained of lower back pain and

neck pain from sitting for long periods of time (Tr. 274). During Plaintiff's next appointment on August 11, 2008 (Plaintiff's last appointment prior to the date he was last insured), Plaintiff complained of some arm pain from a fall down some stairs three weeks prior to the appointment, and his low back and neck pains remained the same (Tr. 275). At Plaintiff's appointment on December 1, 2008 (Plaintiff's first appointment after losing insured status), Plaintiff informed Dr. Salibay that he was sleeping well, he was not suicidal, and that his lower back pain was rated as a four or five out of 10 (Tr. 275).

Plaintiff's next appointment was on March 27, 2009, where he reported to Dr. Salibay that he had tripped over some dumbbells a month and a half prior to the appointment, which required him to stay in bed for two weeks (Tr. 275). Dr. Salibay's impression of Plaintiff remained the same as it had been at previous appointments—Plaintiff continued to have lower back pain (Tr. 275). During Plaintiff's appointment on April 7, 2009, Plaintiff sought medication refills, and his back pain was unchanged (Tr. 276). At his appointment on July 20, 2009, Plaintiff informed Dr. Salibay that "when he does repetitive work, bending, lifting, and walking he hurts," but his hip pain "is better with the pain medication" (Tr. 277). Plaintiff reported that five pounds of metal had fallen on him in March, and he was having more low back pain (Tr. 277). At Plaintiff's appointment on December 3, 2009, Plaintiff reported that he had been kicked by a horse a week prior to the appointment, and he was still having low back pains (Tr. 277). Dr. Salibay found that Plaintiff could perform good shoulder shrugs bilaterally, could walk well, had no Babinski, and the rest of his exams were unremarkable (Tr. 277).

In March 2010, Plaintiff reported that his back pain was a level four out of 10 in severity with medication (Tr. 278). On July 12, 2010, Plaintiff reported shoulder and low back pain,

possibly due to being "twisted" (Tr. 278). In November 2010, Plaintiff reported having steady back and shoulder pains, and he had twisted his low back on the right side (Tr. 278).

In March 2011, Plaintiff reported his headaches were no longer controlled with medication, that his headache pain had increased, that he has stomach pain after eating, that his sleep has been getting worse, that his hip joints are painful, that he has numbness when he lies down, and that his back and arms are hurting at night (Tr. 279). In June 2011, Plaintiff reported similar shoulder and low back pain, and he sought refills on his medication (Tr. 279). In September 2011, during Plaintiff's last appointment with Dr. Salibay in the record, Plaintiff reported that his low back pain and shoulder pains wake him up at night, and Dr. Salibay found that he had limited motion in the upper extremities due to pain (Tr. 280).

### 2. Dr. Haworth

Plaintiff saw Dr. Haworth for a consultative psychological examination on August 24, 2009 (Tr. 200). Dr. Haworth administered a clinical interview and a mental status exam of Plaintiff (Tr. 200). Dr. Haworth found that Plaintiff had good hygiene, appropriate dress, normal posture and gait, no facial tics or tremors, good eye contact, and normal rate and clarity of speech (Tr. 200). Plaintiff informed Dr. Haworth that he is a light drinker and an occasional marijuana user (Tr. 201). Dr. Haworth noted that Plaintiff takes Xanax for his anxiety and Amitryptyline to help with sleeping (Tr. 201). Plaintiff denied having any homicidal or suicidal thoughts, and he also denied experiencing any hallucinations (Tr. 201). Dr. Haworth found that Plaintiff did not appear to be delusional (Tr. 201). Plaintiff reported having good appetite and obtaining eight hours of sleep each night (Tr. 201).

Plaintiff reported to Dr. Haworth that he was not depressed, although he had been irritable from chronic pain (Tr. 202). Plaintiff reported that he had not had any panic attacks

since he had been taking Xanax (Tr. 202). Plaintiff stated he did not have crying spells (Tr. 202). Dr. Haworth found Plaintiff to be properly oriented to place and time, alert during the interview, and coherent and easy to understand in his responses (Tr. 202). Plaintiff was able to complete memory exercises, although he struggled to complete "backwards tasks" (Tr. 202).

Dr. Haworth found that Plaintiff had mild to moderate impairment of his short term memory, mild impairment in his ability to sustain concentration, and mild impairment in his long term and remote memory functioning (Tr. 203). Dr. Haworth found that Plaintiff fell into the average range of intellectual functioning, although he noted that Plaintiff may have some learning problems in math and reading (Tr. 203). Dr. Haworth found Plaintiff to have mild impairment in his social relating, mild impairment in his ability to adapt to change, and no impairment in his ability to follow directions (Tr. 203).

Dr. Haworth diagnosed Plaintiff with an anxiety disorder, not otherwise specified, with mixed anxiety and depressive symptoms, as well as cannabis abuse (Tr. 204). Dr. Haworth also diagnosed Plaintiff as possibly having a learning disorder, not otherwise specified (Tr. 204). Dr. Haworth gave Plaintiff a GAF score of 60 (Tr. 204).

C.    **Hearing Testimony**

While the Court will not summarize the hearing testimony in this report and recommendation, the Court has carefully reviewed the transcript from the hearing.

III.    **ELIGIBILITY AND THE ALJ'S FINDINGS**

A.    **Eligibility**

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

Case 4:13-cv-00022-HSM-SKL   Document 20   Filed 06/03/14   Page 7 of 31   PageID #: 437

period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, No. 12-4316, 2013 WL 5749156, at *9 (6th Cir. Oct. 24, 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

### B. The ALJ's Findings

At step one of the process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since September 29, 2008, the amended alleged onset date (Tr. 17). At step two, the ALJ found Plaintiff had the following severe impairments: history of shoulder surgery, low back disorder, and anxiety (Tr. 17). At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Tr. 18). Specifically, the ALJ considered Listings 12.06 and other listings under 12.00 (Tr. 18-19). The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform unskilled light work except he was limited to no overhead reaching bilaterally and should perform no repetitive bending or stooping (Tr. 19). At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work (Tr. 24). At step five, the ALJ noted that Plaintiff was a younger individual, 18-49, on the date of last insured but subsequently changed age category to closely approaching advanced age, had a marginal education, and was able to communicate in English (Tr. 24). After considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy which Plaintiff could perform (Tr. 24). These findings led to the ALJ's determination that Plaintiff was not under a disability at any time from September 29, 2008, the amended alleged onset date, through September 30, 2008, the date last insured (Tr. 25).

### IV. ANALYSIS

It is undisputed that Plaintiff must prove he became disabled on or before September 30, 2008, the date he was last insured. Plaintiff alleges that the ALJ erred by: (1) having a different ALJ sign the decision than the ALJ who presided over the hearing; (2) failing to properly

9

consider Plaintiff's impairments; (3) failing to include a function-by-function assessment in the RFC determination; (4) not giving proper weight to the opinion of the treating physician; (5) failing to include any mental limitations in the RFC determination despite the ALJ's finding that Plaintiff's anxiety was a severe impairment; (6) improperly evaluating Plaintiff's credibility; and (7) concluding that Plaintiff had no severe mental limitations based solely on his GAF scores. Plaintiff argues that the ALJ's errors require remand. Each of Plaintiff's arguments will be addressed below.

### A.      Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (internal citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the

Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

As relevant in this review, an ALJ must consider "the claimant's allegations of his symptoms . . . with due consideration to credibility, motivation, and medical evidence of impairment." *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 571 (6th Cir. 1989). Credibility assessments are properly entrusted to the ALJ, not to the reviewing court, because the ALJ has the opportunity to observe the claimant's demeanor during the hearing. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Where an ALJ's credibility assessment is fully explained and not at odds with uncontradicted evidence in the record, it is entitled to great weight. *See King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984) (noting the rule that an ALJ's credibility assessment is entitled to "great weight," but "declin[ing] to give substantial deference to the

ALJ's unexplained credibility finding" and holding it was error to reject uncontradicted medical evidence).  *See also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) (ALJ was entitled to "rely on her own reasonable assessment of the record over the claimant's personal testimony"); *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) (ALJ's credibility assessment is entitled to substantial deference).  Substantial deference has been held to mean that "[a]n [ALJ's] credibility findings are virtually 'unchallengeable.'"  *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (quoting *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 113 (6th Cir. 2010)).

### B.     Signature by ALJ Who Did Not Conduct the Hearing

Plaintiff contends that it was a procedural error for ALJ Edward Snyder to sign the decision when ALJ Carey Jobe presided over the hearing.  Plaintiff argues that there is no documentation in the record indicating that ALJ Jobe approved the decision or gave ALJ Snyder permission to sign the decision on his behalf.  Plaintiff contends that the decision is not properly authenticated because ALJ Snyder's signature violates the Social Security Administration's Hearing, Appeals, and Litigation Law Manual ("HALLEX") I-2-8-40.

Defendant agrees that a different ALJ signed the decision than the ALJ who conducted the hearing in this case.  Defendant concedes that there is no signatory authorization in the file, and that HALLEX was not explicitly followed, but argues that remand is unwarranted because Plaintiff has not shown any resulting prejudice.

The Commissioner of Social Security "provides 'guiding principles, procedural guidance and information' to adjudicators and staff of the Office of Hearings and Appeals" in the HALLEX manual.  *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 397 (6th Cir. 2008) (quoting HALLEX I-1-0-1, 2005 WL 1863821, at *1 (June 21, 2005)).  HALLEX "defines procedures for

carrying out policy and provides guidance for processing and adjudicating claims at the Hearing, Appeals Council and Civil Actions levels." HALLEX I-1-0-1, 2005 WL 1863821, at *1 (June 21, 2005).

HALLEX provides guidance on the situation at issue here, where an ALJ other than the ALJ who conducted the hearing issues or signs the decision. *See* HALLEX I-2-8-40, 1993 WL 643064, at *1-2 (May 16, 2008). The guidelines provide two procedures which allow an ALJ other than the ALJ who conducted the hearing to sign the decision. First, the Hearing Office Chief ALJ ("HOCALJ") may reassign a case if the ALJ who conducted the hearing is unavailable to issue a decision for a prolonged period of time, due to "death, retirement, resignation, illness" or "other cause resulting in prolonged leave of twenty or more days." *Id.* at *1. Second, where the ALJ who conducted the hearing has approved a final decision draft but is unavailable to sign the final decision, the ALJ may grant the HOCALJ authority to sign the decision on behalf of the ALJ. *Id.* In the second case, the guidelines require that the final decision signed by the HOCALJ, the draft decision approved by the ALJ, and the ALJ's signatory authorization must be retained in the claims folder. *Id.* at *2.

As Defendant concedes that the requirements under HALLEX have not been met, the Court need not address whether the guidelines have been followed. Rather, the Court will determine whether remand is warranted as a result of Defendant's failure to comply with the HALLEX guidelines.

The procedural guidelines in the HALLEX manual are not binding on the courts. *Bowie*, 539 F.3d at 399 (noting that "the procedural guidance to the staff and adjudicators of the Office of Hearing and Appeals set forth in the HALLEX" are "not binding on this court"); *Lawrence v. Colvin*, No. 3:13-032-DCR, 2014 WL 640990, at *4 (E.D. Ky. Feb. 18, 2014) ("the HALLEX

procedures are not binding on this Court"); *Alilovic v. Astrue*, No. 1:12CV323, 2012 WL 5611077, at *7 (N.D. Ohio Nov. 15, 2012) ("HALLEX is an 'internal guidance tool' for use by ALJs and other staff members, is not published in either the Federal Register or the Code of Regulations, and does not have the force of law."). Furthermore, the HALLEX guidelines do not create procedural due process rights. *Lawrence*, 2014 WL 640990 at *4 (citing *Dukes v. Comm'r of Soc. Sec.*, No. 1:10-cv-436, 2011 WL 4374557, at *9 (S.D. Mich. Sept. 19, 2011)).

"Nonetheless, some courts have granted relief where the procedures were not followed *and where the plaintiff demonstrates prejudice* from the failure to follow procedures." *Id.* (emphasis added) (citing *Estep v. Astrue*, No. 2:11-cv-00017, 2013 WL 212643, at *12 (M.D. Tenn. Jan. 18, 2013) (Report and Recommendation adopted by *Estep v. Colvin*, No. 2:11-cv-00017, 2013 WL 2255852 (M.D. Tenn. May 22, 2013)); *see also Kendall v. Astrue*, No. 09-239-GWU, 2010 WL 1994912 (E.D. Ky. May 19, 2010) ("This court concluded that a failure to follow the exact procedures in HALLEX did not require reversal absent a convincing showing of prejudice to the plaintiff."). There is no prejudice where the ALJ who presides at the hearing writes the decision and a second ALJ merely signs the decision for the presiding ALJ. *Estep*, 2013 WL 212643 at *12 (citing *Pehrson v. Soc. Sec. Admin. Comm'r*, 2011 WL 2650187, at *2-13 (D. Maine July 6, 2011); *Kendall*, 2010 WL 1994912 at *4). Where the second ALJ writes and signs the decision, courts have found prejudice when the decision relies on observations of the plaintiff's demeanor at the hearing in making a credibility determination. *See Cohan v. Comm'r of Soc. Sec.*, 2011 WL 3319608, at *4-6 (M.D. Fla. July 29, 2011). However, courts have found no prejudice exists where an ALJ's credibility determination is "based on evidence from the existing record and the transcript from the hearing," rather than on the plaintiff's demeanor at the hearing, "and a second hearing would not have added in any meaningful way to

14

the record." *George v. Astrue*, 338 F. App'x 803, 805 (11th Cir. 2009); *see also Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001).

Here, Plaintiff has not made any allegations of prejudice resulting from the ALJ's failure to follow HALLEX guidelines regarding the signature of an ALJ other than the ALJ who conducted the hearing. Where a plaintiff fails to make allegations of prejudice, he is not entitled to relief unless the prejudice is apparent from the record. *See Estep*, 2013 WL 212643 at *12. The Court must therefore determine whether, based upon the administrative record, Plaintiff was prejudiced by the deviation from the HALLEX guidelines. ALJ Snyder signed the decision "Edward A. Snyder for Carey Jobe" (Tr. 25). There is nothing in the record to indicate that Plaintiff's case was reassigned to ALJ Snyder or that ALJ Snyder authored the opinion. In this situation, the Court can only infer that ALJ Snyder signed the decision on behalf of ALJ Jobe, who approved it. *See Lawrence*, 2014 WL 640990 at *4. "Although the lack of explanation for the signature is less than ideal, it is not reversible error warranting remand." *Id.* (citing *Estep*, 2013 WL 212643). Accordingly, I **FIND** that Plaintiff was not prejudiced by ALJ Snyder's signature on behalf of ALJ Jobe.

After a careful review of the record, I **FIND** that ALJ Snyder signed the decision on behalf of ALJ Jobe, with his approval, and therefore **FIND** no prejudice to Plaintiff. Accordingly, I **CONCLUDE** that any error resulting from the ALJ's failure to follow the HALLEX guidelines was harmless, and thus remand is not warranted.

### C.    Consideration and Severity of Plaintiff's Impairments

Plaintiff argues that the ALJ failed to properly consider Plaintiff's impairments and failed to provide sufficient reasons for not finding these impairments to be severe. Specifically, Plaintiff argues that the ALJ erred by failing to find Plaintiff's migraine headaches to be a severe

impairment, given the fact that the step two severity determination is a de minimis hurdle and Plaintiff's migraine headaches were diagnosed and well-documented in the record.

In response to this argument, Defendant argues that because the ALJ found Plaintiff had some severe impairments at step two, the specific impairments listed in the ALJ's step two finding are irrelevant and not reversible error. In the alternative, Defendant contends that the ALJ specifically considered Plaintiff's alleged migraine headaches and determined they were not a severe impairment. Defendant argues that substantial evidence supports the ALJ's finding, as Plaintiff's headaches responded well to conservative treatment, Plaintiff reported that his medication relieved his symptoms, and Plaintiff himself informed his doctor that his headaches were "not serious." [Doc. 19 at Page ID # 422 (citing Tr. 269)].

The step two severity determination is a low bar: an impairment is only "not severe if it does not significantly limit your physical or mental ability to do basic work activities," which are "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521. "Step two has been described as a *de minimis* hurdle; that is, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190 (6th Cir. 2009) (internal quotation marks omitted) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007)). The goal of step two's severity determination is to "screen out totally groundless claims." *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (internal quotation marks omitted) (quoting *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985)).

When an ALJ makes a finding in step two that one or more impairments are severe, "the ALJ must consider limitations and restrictions imposed by *all* of an individual's impairments, even those that are not severe." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir.

2009) (internal quotation marks omitted) (quoting SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996)). "And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two does 'not constitute reversible error.'" *Id.* (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant," and not reversible error. *Anthony*, 266 F. App'x at 457 (citing *Maziarz*, 837 F.2d at 244).

Here, the ALJ specifically found that Plaintiff's history of shoulder surgery, low back disorder, and anxiety were severe impairments (Tr. 17). The ALJ found that Plaintiff's migraine headaches and other alleged impairments were non-severe (Tr. 18). Although the ALJ found Plaintiff's headaches to be non-severe in step two of his determination, the ALJ considered all of Plaintiff's alleged impairments, including his migraine headaches, in the remaining steps of the disability determination (Tr. 20). I **FIND** that the ALJ's determination at step two that Plaintiff's migraine headaches were not a severe impairment is therefore legally irrelevant. I therefore **CONCLUDE** that the ALJ did not commit reversible error by deeming Plaintiff's migraine headaches a non-severe impairment. As it is legally irrelevant that the ALJ found Plaintiff's migraine headaches to be non-severe, the Court need not address whether the ALJ's severity determination was supported by substantial evidence.

## D. Lack of Function-by-Function Assessment

Plaintiff argues that the ALJ erred by failing to include a function-by-function assessment in the RFC determination as required by SSR 96-8p, 1996 WL 374184 (July 2, 1996). Plaintiff quotes from SSR 96-8p, stating that the "RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities,"

and that "[e]ach function must be considered separately" for exertional capacity.  *Id.* at *3, 5.

Plaintiff contends that while the ALJ limited Plaintiff to no overhead reaching and no repetitive

bending or stooping, the ALJ erred by failing to include a function-by-function assessment of

each of the exertional factors.  While Plaintiff quotes SSR 96-8p, Plaintiff does not support his

arguments with any citation to case law or other regulatory authority.  Defendant contends that

while the ALJ did not provide a function-by-function analysis in the decision, the ALJ properly

considered Plaintiff's limitations in a "thorough discussion of the evidence of record, including

Plaintiff's subjective complaints, his daily activities, and the medical records."  [Doc. 19 at Page

ID # 426].

"While SSR 96-8p requires a function-by-function evaluation to determine a claimant's

RFC, case law does not require the ALJ to discuss those capacities for which no limitation is

alleged."  *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (internal

citations and quotation marks omitted).  Further, "[a]lthough a function-by-function analysis is

desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing," as

there is a difference "between what an ALJ must consider and what an ALJ must discuss in a

written opinion."  *Id.* (internal citations and quotation marks omitted).  SSR 96-8p clearly states

that the ALJ must consider each function separately; it does not state that the ALJ must discuss

each function separately in the narrative of the ALJ's decision.  Here, the ALJ specifically

discussed, with detail, Plaintiff's complaints regarding his limitations (Tr. 20) as well as each of

the treating and consultative physicians' opinions regarding Plaintiff's limitations (Tr. 20-23).

The ALJ also stated that he had considered the entire record carefully (Tr. 19) before

determining Plaintiff's RFC.  The ALJ's actual RFC finding states:

> After careful consideration of the entire record, I find that, through
> the date last insured, the claimant had the residual functional

> capacity to perform unskilled light work as defined in 20 CFR
> 404.1567(b) except the claimant would be limited to no overhead
> reaching bilaterally and should perform no repetitive bending or
> stooping.

(Tr. 19).

I therefore **FIND** that the ALJ properly considered each function separately as required by SSR 96-8p. I also **FIND** that the ALJ's narrative discussion sufficiently explained Plaintiff's ability to perform work activities and his limitations in performing work activities. As the ALJ properly considered Plaintiff's impairments and, contrary to his arguments, considered all of them, whether severe or not, in combination with one another, I **FIND** the ALJ's RFC determination to be proper and supported by substantial evidence. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 729 (6th Cir. 2013).

### E. Weight of Treating Physician Opinion

The law governing the weight to be given to a treating physician's opinion, often referred to as the treating physician rule, is well settled: A treating physician's opinion is entitled to complete deference if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2) (now (c)(2)) (alteration in original). Even if the ALJ determines that the treating source's opinion is not entitled to controlling weight, the opinion is still entitled to substantial deference or weight commensurate with "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192-93 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2) (now (c)(2)); SSR 96-2p, 1996

WL 374188, at *4 (July 2, 1996)). The ALJ is not required to explain how he considered each of these factors, but must nonetheless give "good reasons" for rejecting or discounting a treating physician's opinion. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).

The United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") has reiterated that remand may be required when the ALJ fails to specify the weight afforded to a treating physician's opinion and fails to provide good reasons for giving the opinion an unspecified weight that is less than controlling. *Cole v. Astrue*, 661 F.3d 931, 938-39 (6th Cir. 2011). As stated in *Cole*, "[t]his Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned.'" *Id.* at 939 (alteration in original) (quoting *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

In the same vein, the Sixth Circuit also recently took issue with an ALJ merely stating the treating physician's opinion "conflicted with other evidence," noting the allegedly conflicting evidence must be specified and "must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013). The Sixth Circuit held "[a] more rigorous scrutiny of the treating-source opinion

than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation requires." *Id.* at 379. Although "a properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians . . . the regulations do not allow the application of greater scrutiny to a treating-source opinion as a means to justify giving such an opinion little weight." *Id.* at 379-80 (citations omitted).

Failure to give good reasons requires remand, even if the ALJ's decision is otherwise supported by substantial evidence, unless the error is de minimis. *Wilson*, 378 F.3d at 544, 547. In *Cole*, the Sixth Circuit recognized that a violation of the "good reasons" rule could only be harmless error under three circumstances: where the treating source opinion was patently deficient such that it could not be credited; where the Commissioner adopted the opinion of the treating source or made findings consistent with that opinion; or where the Commissioner otherwise met the goal of the treating source regulation, 20 C.F.R. § 404.1527(c)(2). *Cole*, 661 F.3d at 940 (quoting *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010)). While each case must be evaluated to determine if the required procedures have been appropriately followed, an ALJ's failure either to specify the weight afforded to a treating physician or to outline sufficiently specific good reasons can be grounds for remand. *Gayheart*, 710 F.3d at 380; *Cole*, 661 F.3d at 939-40.

It is undisputed that Dr. Salibay is a treating physician and that her opinion is subject to the treating source rule. On July 12, 2010, Dr. Salibay issued her opinion regarding Plaintiff's ability to do work-related activities (Tr. 232-33). In her opinion, Dr. Salibay stated that Plaintiff could lift and carry less than 10 pounds on an occasional basis, lift and carry less than 10 pounds on a frequent basis, stand and walk for about two hours in an eight-hour day, sit for less than two

hours in an eight-hour day, sit for 15 minutes before changing position to relieve discomfort, and stand for 20 minutes before changing position to relieve discomfort (Tr. 232). Dr. Salibay opined that Plaintiff would need to walk around every 15 minutes for a period of 15 minutes in order to relieve discomfort, and that Plaintiff would need the opportunity to shift from sitting or standing/walking at will (Tr. 232). Dr. Salibay opined that Plaintiff would need to be able to lie down or elevate his legs at unpredictable intervals for about two hours or less in an eight-hour workday due to his severe low back pain and shoulder pain (Tr. 232). Dr. Salibay further opined that Plaintiff could never twist, stoop, bend, or climb ladders, and that Plaintiff could only occasionally crouch or climb stairs (Tr. 232-33). In Dr. Salibay's opinion, Plaintiff's abilities to reach, push and pull, and gross and fine manipulation were adversely affected by his impairments (Tr. 233). Dr. Salibay further placed environmental restrictions on Plaintiff, requiring that Plaintiff avoid all exposure to extreme cold, extreme heat, high humidity, fumes, odors, dusts, gases, perfumes, soldering fluxes, solvents and cleaners, and chemicals (Tr. 233). Dr. Salibay opined that Plaintiff would be absent from work more than four days per month due to his impairments (Tr. 233). Lastly, Dr. Salibay opined that Plaintiff's severe pain would constantly interfere with his attention and concentration (Tr. 233).

Plaintiff argues that the ALJ erred by failing to give proper weight to the opinion of Dr. Salibay. Plaintiff argues that the ALJ failed to provide good reasons for discounting the treating physician's opinion, and contends that "[t]he only reason provided by the ALJ for rejecting Dr. Salibay's opinion was that her 'opinion is unsupported by the record, particularly [Dr. Salibay's] own objective findings. Further, this assessment is very recent and all records prior to the expiration of the claimant's date last insured are grossly inconsistent with these extreme limitations.'" [Doc. 16 at Page ID # 390 (citing Tr. 22)]. Plaintiff argues that the ALJ fails to

cite any evidence to support his broad statement that Dr. Salibay's opinion was inconsistent with the medical records. Plaintiff contends that there is evidence in the record that supportS Dr. Salibay's opinion, and that the ALJ's statement that all records prior to Plaintiff's date of last insured are inconsistent with Dr. Salibay's opinion is incorrect. Plaintiff further argues that where a treating source opinion is not given controlling weight, the ALJ must apply certain factors in determining what weight to give the opinion, which Plaintiff contends the ALJ did not do here.

Defendant argues that the ALJ fully examined Dr. Salibay's opinion and properly explained the weight he gave it. Defendant contends that the ALJ's decision not to give Dr. Salibay's opinion controlling weight is supported by substantial evidence because it was unsupported by objective medical evidence and is inconsistent with the record, including Dr. Salibay's own treatment notes. Defendant argues that the ALJ gave good reasons for assigning Dr. Salibay's opinion less than controlling weight, namely that it was inconsistent with the medical evidence relating to Plaintiff's date last insured; it was inconsistent with Dr. Salibay's own medical exams relating to Plaintiff's date last insured; and Dr. Salibay did not offer her opinion until almost two years after Plaintiff's last date insured.

The ALJ discussed Dr. Salibay's treatment and opinion in his decision, and the ALJ cited to Dr. Salibay's treatment notes in his discussion of Plaintiff's medical records regarding his RFC (Tr. 20-22). The ALJ made the following finding regarding the weight assigned to Dr. Salibay's opinion:

> I find Dr. Salibay's opinion unsupported by the record, particularly his [sic] own objective findings. Further, this assessment is very recent and all records prior to the expiration of the claimant's date last insured are grossly inconsistent with these extreme limitations. While I give this opinion far less weight than that of Dr. Wilson's, I acknowledge that the claimant could experience some discomfort

23

due to his impairments and have taken that into consideration for
the claimant's residual functional capacity stated above.

(Tr. 22).

Plaintiff argues that Dr. Salibay's opinion is supported by Dr. Salibay's treatment of Plaintiff prior to Plaintiff's last date insured, September 30, 2008. Dr. Salibay treated Plaintiff from September 2004 to September 2011 (Tr. 263-280). An ALJ may properly disregard treatment records and opinions that are not relevant to whether Plaintiff was disabled prior to the date last insured. *See Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004) ("Evidence of disability obtained after the expiration of insured status is generally of little probative value."); *Griffin v. Astrue*, No. 2:08-0106, 2010 WL 2507776, at *6 (M.D. Tenn. June 18, 2010) ("Those reports say nothing about whether Plaintiff was disabled prior to her date last insured and are of little value in establishing whether Plaintiff was disabled [prior to her date of last insured] because they were made so long after that date."). "The crucial date in a social security case is the date that claimant's insured status expired" and evidence of disability after that date is "generally of little probative value." *May v. Astrue*, No. 4:10CV1533, 2011 WL 3490186, at *5 (N.D. Ohio June 1, 2011). "Medical evidence dated after a claimant's expiration of insured status is only relevant to a disability determination where the evidence 'relates back' to the claimant's limitations prior to the date last insured." *Id.*; *see also Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003) ("Post-expiration evidence must relate back to the claimant's condition prior to the expiration of her date last insured."). "The related back evidence is relevant only if it is reflective of a claimant's limitations prior to the date last insured, rather than merely his impairments or condition prior to this date." *May*, 2011 WL 3490186, at *5. Thus, Dr. Salibay's treatment notes and opinions that are not relevant to whether Plaintiff

was disabled prior to September 30, 2008, the date Plaintiff was last insured, may be properly disregarded by the ALJ.

Dr. Salibay's opinion as to Plaintiff's limitations was issued almost two years after Plaintiff's last date insured (Tr. 233). Further, nothing in Dr. Salibay's opinion relates the opinion to the time period when Plaintiff was still insured. Dr. Salibay's completed medical opinion form appears to describe Plaintiff's capabilities and limitations as they existed on July 12, 2010 (Tr. 232-33). Thus, Dr. Salibay's opinion does not appear to be relevant to the period prior to Plaintiff's date last insured.

Additionally, Dr. Salibay's treatment records do not support that Plaintiff was disabled prior to his date last insured. Dr. Salibay's treatment records show that in 2006 Plaintiff was able to work for a boat company in Texas for a month and a half, and he was planning on working in New Orleans to tear down houses in 2006, despite no longer taking any of his medication (Tr. 272). Dr. Salibay's treatment notes show that Plaintiff's headaches were well managed with medication prior to the date last insured (Tr. 273). While Plaintiff reported that his lower back pain was bad in July 2007 from moving boxes, he reported it was better in November 2007 (Tr. 274). In March 2008, Plaintiff reported that he was going to the shooting range (Tr. 274). In August 2008, at Plaintiff's last appointment with Dr. Salibay before he lost his insured status, Plaintiff reported that he had fallen down some stairs and hurt his arm, but his back and neck pains remained the same (Tr. 275). During his appointment immediately after his insured status expired, Plaintiff reported that he was sleeping well and that his lower back pain was a four or five out of 10 (Tr. 275). Plaintiff had previously stated that a headache rated four out of 10 was "not serious" (Tr. 269). During Plaintiff's second appointment after having lost insured status, Plaintiff reported having fallen over dumbbells, which kept him in bed for two

weeks (Tr. 275).  Later, Plaintiff reported that five pounds of metal had fallen on him and that he

was having more back pain (Tr. 277).  In December 2009, Plaintiff reported that he had been

kicked by a horse (Tr. 277).  On July 12, 2010, Plaintiff reported shoulder and back pain from

having twisted his back (Tr. 278).  This is the same date on which Dr. Salibay completed her

medical opinion form regarding Plaintiff's limitations (Tr. 232-33).

I **FIND** that the ALJ's decision to assign little weight to Dr. Salibay's opinion is

supported by substantial evidence. Dr. Salibay's records of Plaintiff's treatment prior to

Plaintiff's last date insured show Plaintiff improving or remaining the same, and even returning

to work and discontinuing medication; Dr. Salibay's treatment records after Plaintiff lost insured

status show Plaintiff's symptoms worsening due to falling over dumbbells, being kicked by a

horse, and twisting his back; and Dr. Salibay's opinion was issued almost two years after

Plaintiff lost insured status and did not relate back to the insured time period.  Accordingly, I

**CONCLUDE** that the ALJ's discounting of Dr. Salibay's opinion was proper and does not

violate the treating physician rule.

### F.      Lack of Mental Limitations in RFC Determination

Plaintiff argues that the ALJ erred by failing to include mental limitations in the RFC

when the ALJ found anxiety to be a severe impairment in step two.  Plaintiff contends that

because the ALJ found anxiety to be "more than a minimal impairment in the claimant's ability

to perform work related activities," the ALJ should have provided limitations in the RFC

"regarding concentration, persistence, and pace."  [Doc. 16 at Page ID # 392].  Plaintiff asks that

the case be remanded for proper consideration of Plaintiff's mental RFC.  Defendant argues that

the ALJ properly relied upon Dr. Haworth's consultative exam and opinion, Plaintiff's daily

activities, and Plaintiff's lack of medical treatment to determine Plaintiff's RFC.  Defendant

argues that substantial evidence supports the ALJ's RFC determination. Plaintiff fails to cite to any case law, regulation, or statute that requires an ALJ to include a limitation in an RFC for an impairment found to be severe in step two, and Defendant fails to cite any authority to the contrary.

A finding that an impairment is severe at step two does not necessarily require that the ALJ include greater limitations in the RFC specific to that impairment, as the limitations in the RFC may adequately address that impairment. *See, e.g., Williams v. Comm'r of Soc. Sec.*, No. 1:12 CV 1331, 2013 WL 5410780, at *2 (N.D. Ohio Sept. 26, 2013) ("[A] severe impairment of the right knee . . . does not mean that the ALJ would necessarily have included greater limitations in the RFC."); *McVey v. Comm'r of Soc. Sec.*, No. 2:10-cv-231, 2012 WL 966484, at *2 (E.D. Tenn. Mar. 21, 2012) (finding that the ALJ did not err by failing to explicitly mention a severe impairment in reaching his RFC determination where it is apparent the ALJ took the limitations into consideration). Here, the ALJ specifically considered Plaintiff's anxiety, as well as Plaintiff's other mental health complaints, in making the RFC determination (Tr. 21). The ALJ noted that Plaintiff was prescribed Xanax for his anxiety by Dr. Salibay (Tr. 21). The ALJ considered the fact that Plaintiff had sought little other mental health treatment (Tr. 21). The ALJ also considered Plaintiff's evaluation with Dr. Haworth, who found that Plaintiff was not in any physical or mental distress, had good appetite, was sleeping well with only occasional use of sleep medication, and had not experienced any panic attacks since beginning Xanax treatment (Tr. 21-22).

Accordingly, I **FIND** that the ALJ's RFC determination, including the lack of any mental limitation, is supported by substantial evidence.

### G.    Evaluation of Plaintiff's Credibility

Plaintiff argues that the ALJ erred by failing to properly assess and evaluate Plaintiff's credibility as required by SSR 96-7p, 1996 WL 374186 (July 2, 1996).  Plaintiff quotes a large portion of this ruling and argues that while the ALJ stated he used the criteria from SSR 96-7P in reaching his decision, merely "recit[ing] the factors that are described in the regulations for evaluating symptoms" is "not enough."  *Id.* at *2.  Plaintiff argues that the ALJ erred in making a credibility determination by emphasizing Plaintiff's daily activities and ignoring other evidence that supported Plaintiff's allegations of disability.  Plaintiff fails to state what evidence the ALJ ignored.  Defendant argues that the ALJ's credibility determination was proper because the ALJ did not rely exclusively on Plaintiff's daily activities, but rather considered the record as a whole.

An ALJ may discount a claimant's credibility based on daily activities that are inconsistent with the claimant's complaints.  *Meece, v. Barnhart*, 192 F. App'x 456, 467 (6th Cir. 2006).  A claimant's subjective complaints of disabling pain may be contradicted by daily activities such as walking, washing dishes, grocery shopping, dusting, laundry, and occasional driving.  *Moses v. Comm'r of Soc. Sec.*, 402 F. App'x 43, 47 (6th Cir. 2010).  While daily activities that are inconsistent with the claimant's complaints may be used to discount the claimant's credibility, a claimant's ability to perform some household activities intermittently "when his pain level allows him to do so is not inconsistent with [claimant's] claim that his pain prevents him from engaging in regular and continuous employment."  *Meece*, 192 F. App'x at 466.

Here, the ALJ accurately described Plaintiff's abilities and daily activities, noting that he was able to drive and to do some household chores, but that he experienced pain from activities such as mopping (Tr. 20).  The ALJ considered Plaintiff's statements that he could tend to his

28

dogs, prepare light meals, do laundry, and perform self-care without assistance, although he needed help to dress when his pain was high (Tr. 20). The ALJ further considered Plaintiff's statements regarding his impairments, abilities, pain level, and side effects from medication (Tr. 20). Based upon all of this information and the record as a whole, the ALJ found that Plaintiff's daily activities were inconsistent with total disability, and further discounted Plaintiff's credibility due to inconsistencies between Plaintiff's former statements and his statements at the hearing (Tr. 19-20). Accordingly, I **FIND** the ALJ's decision to discount Plaintiff's credibility was supported by substantial evidence in the record.

### H.    Finding No Severe Mental Limitations Based Solely on GAF Scores

Plaintiff's final argument is that the ALJ erred by concluding Plaintiff had no severe mental limitations based only on his GAF scores. Plaintiff argues that the Commissioner has declined to endorse the use of GAF scores in Social Security disability programs and has indicated that GAF scores are not directly correlated to the requirements of the mental disorders listing. Defendant argues that the ALJ relied on Dr. Haworth's opinion expressed in the summary section of his report rather than on Dr. Haworth's GAF assessment.

A GAF is a clinician's subjective rating, on a scale of 0-100, of a person's overall psychological functioning. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006). A GAF score of 41-50 corresponds to "serious symptoms (e.g., suicidal ideation, severe obsessional rituals . . . ) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* at 503 (quoting DSM-IV-TR at 34) (internal quotation marks omitted). A GAF score of 51-60 corresponds to a moderate impairment "(e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate

difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.*

Plaintiff cites to *Kennedy v. Astrue*, in which the Sixth Circuit addressed GAF scores. 247 F. App'x 761, 766 (6th Cir. 2007). While the Commissioner has "declined to endorse the GAF score for use in the Social Security and SSI disability programs, and has indicated that GAF scores have no direct correlation to the severity requirements of the mental disorders listings," "[a] GAF score may help an ALJ assess mental RFC." *Id.* (citations and internal quotation marks omitted). The Sixth Circuit's focus on GAF scores in *Kennedy* is not to hold that an ALJ may not consider GAF scores in determining mental limitations, but rather to hold that GAF scores "are not raw medical data" and changes in GAF scores "do not necessarily indicate improved symptoms or mental functioning." *Id.* Therefore, while an ALJ should not conclude that a claimant's mental functioning has *improved* based solely on GAF scores, the ALJ may properly consider a physician's assessment of a claimant's GAF score in determining the claimant's mental limitations.

Here, the ALJ considered Plaintiff's GAF score in his analysis of Plaintiff's RFC (Tr. 22). The ALJ specifically stated, "The claimant's Global Assessment of Functioning (GAF) score was 60, suggesting only moderate symptoms, or a moderate difficulty in social, occupational or school functioning," and cited the DSM-IV (Tr. 22). This was one sentence in a lengthy paragraph discussing Plaintiff's mental limitations. The ALJ did not use Plaintiff's GAF score to find that Plaintiff's mental functioning had improved, but merely considered the GAF score as information relative to Plaintiff's mental capabilities. The ALJ also specifically considered Dr. Haworth's written evaluation of Plaintiff, Plaintiff's successful treatment with Xanax, Plaintiff's performance on the memory exercises with Dr. Haworth, Plaintiff's

intelligence evaluation, and Plaintiff's work history (Tr. 21-22). The ALJ gave Dr. Haworth's opinion some weight, but the ALJ actually found that Plaintiff had a more severe limitation in concentration than Dr. Haworth had opined (Tr. 23). Accordingly, I **FIND** that the ALJ did not improperly rely upon Plaintiff's GAF score in his determination of Plaintiff's mental limitations. I further **FIND** that the ALJ's determination of Plaintiff's RFC and Plaintiff's mental limitations was proper and supported by substantial evidence in the record.

## V.     CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I **RECOMMEND**[1] that:

1)  Plaintiff's motion for judgment on the pleadings [Doc. 14] be **DENIED**.

2)  The Commissioner's motion for summary judgment [Doc. 18] be **GRANTED**.

3)  The Commissioner's decision denying benefits be **AFFIRMED**.


s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).